UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN HUTSON,<br><br>            Petitioner,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>            Respondent. | Case No. 1:11-cv-00302-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

John Hutson ("Petitioner") seeks review of the Commissioner of Social Security Administration's final decision denying Petitioner's application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Commissioner with an order to award benefits.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income on April 13, 2009, alleging disability beginning March 15, 1994, due to mental impairments. Petitioner's application was denied initially and on reconsideration, and a hearing was held on January 20, 2011, before Administrative Law Judge ("ALJ") John T. Molleur. The ALJ issued a decision finding Petitioner not disabled on February 10, 2011, and Petitioner timely requested review by the Appeals Council. The Appeals Council denied Petitioner's request for review on June 1, 2011, making the ALJ's decision the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on June 30, 2011. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the January 20, 2011 hearing, Petitioner was represented by counsel and testified on his own behalf. The ALJ also heard testimony from vocational expert Polly Peterson. Born in 1990, Petitioner was four years of age at the time of his alleged onset of disability date, eighteen years of age at the time his application was filed, and twenty years of age at the time of the ALJ's decision. Concerning his education, Petitioner was placed in special education beginning in the second grade and left school after the eighth grade. Petitioner reported making multiple attempts to pass the General Educational Development tests, but he has not received a General Equivalency Degree ("GED"). Petitioner has no past work experience.

**MEMORANDUM DECISION AND ORDER - 2**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since April 3, 2009, Petitioner's protective filing date. (AR 16.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner suffered from the following severe impairments within the meaning of the Regulations: borderline intellectual functioning; learning disorder; and mood disorder, not otherwise specified. (AR 16.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. A finding that one or more of a claimant's impairments meets or equals a listing presumptively demonstrates disability. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d); *see also*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010). The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's mental impairments under Listing 12.04 (*Affective Disorders*) and Listing 12.05 (*Mental Retardation*).  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that Petitioner had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: "he can follow 1 to 2 step instructions; he can work in a low stress environment with only occasional decision making and changes in the work setting, and no production quotas; and he can have only brief, superficial contact with the general public, co-workers and supervisors." (AR 18.)

The decision at step four – where the ALJ ordinarily considers whether a claimant is capable of performing past relevant work – was not applicable in this case because Petitioner has no past relevant work. At step five of the sequential analysis, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ found that Petitioner could perform work existing in significant levels in the national economy. (AR 24.) Based upon the testimony of the vocational expert, the ALJ found that such jobs included: farm laborer, chicken farm laborer, and vegetable farm laborer. (AR 24.) Given the finding that Petitioner could perform work existing in significant numbers in the national economy, the ALJ concluded that Petitioner was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).

**MEMORANDUM DECISION AND ORDER - 4**

An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

If the evidence can reasonably support either affirming or reversing a decision, the Court may not substitute its own judgment for that of the commissioner. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  The Court, however, "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotations and citations omitted).

**MEMORANDUM DECISION AND ORDER - 5**

## DISCUSSION

Petitioner challenges the ALJ's decision on three grounds. First, Petitioner argues that the ALJ committed legal error at step three of the five-step sequential analysis by finding that Petitioner's mental impairments did not meet the requirements of Listing 12.05 (*Mental Retardation*). Second, Petitioner argues that the ALJ failed to properly evaluate the medical opinion evidence. Third, Petitioner argues that the ALJ failed to properly evaluate Petitioner's credibility. Based upon these assignments of error, Petitioner requests that the case be remanded with an order for immediate payment of benefits.

For the reasons set forth below, the Court finds that Petitioner's mental impairments satisfy all of the necessary criteria for Listing 12.05C. Because a finding that a claimant meets or equals a listed impairment set forth in the federal regulations presumptively demonstrates disability, the Court need not address Petitioner's remaining assignments of error and the case will be remanded to the Commissioner with an order to award benefits.

**1.  Listing 12.05C**

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to the federal regulations.[1] 20 C.F.R. §§ 404.1520(d)

---

[1] The Appendix containing the listed impairments appears in the Regulations at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

**MEMORANDUM DECISION AND ORDER - 6**

and 416.920(d). The listing of impairments sets forth impairments that have been deemed severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience. In other words, if a claimant meets or equals a listed impairment, he or she is presumptively disabled. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010).

The claimant bears the burden of establishing a prima facie case of disability under the listing of impairments. *See Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). To "meet" a listed impairment, a claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

Here, the ALJ found at step two of the five-step sequential analysis that Petitioner suffered from the following severe impairments: borderline intellectual functioning; learning disorder; and mood disorder. (AR 16.) At step three, however, the ALJ found that Petitioner's impairments did not meet or equal a listed impairment under the federal regulations. (AR 17-18). Petitioner argues that the evidence in the record demonstrates that his mental impairments meet the criteria of the listing for mental retardation (Listing 12.05C). The Court agrees.

**MEMORANDUM DECISION AND ORDER - 7**

Listing 12.00 governs mental disorders generally and Sections 12.02 through 12.10 identify nine diagnostic categories of impairments that may constitute listed impairments within the meaning of the Regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Listing 12.05 sets forth the criteria for the mental disorder of mental retardation. Most of the mental disorder listings require a claimant to demonstrate the existence of impairment-related functional limitations that are incompatible with the ability to do substantial gainful activity and which are the result of the mental disorder described in the specific listing. Listing 12.05, however, does not follow that model.

The Regulations recognize that Listing 12.05 is different:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. The Regulations then instruct the prospective claimant that, "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id*.

Here, paragraph C of Listing 12.05 is implicated. To satisfy paragraph C, the claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. Thus, to meet the requirements of Listing 12.05C, a claimant must satisfy three elements: (1) the claimant

**MEMORANDUM DECISION AND ORDER - 8**

must satisfy the introductory paragraph by demonstrating that the mental retardation was initially manifested during the development period (before the claimant turned 22 years of age); (2) have a valid verbal, performance or full scale IQ of 60 through 70; and (3) have a physical or other mental impairment imposing additional and significant work-related limitations of function. Each of the above three elements will be addressed below.

### A. Introductory Paragraph of 12.05

The introductory paragraph of Listing 12.05 provides a diagnostic description for mental retardation and states the following: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

As a preliminary matter, the Court notes that Petitioner was born in 1990 and was twenty years of age at the time of the hearing before the ALJ. Thus, everything in the record pertains to Petitioner's "developmental period" for the purposes of the introductory paragraph contained in Listing 12.05.

The ALJ concluded that Petitioner did not satisfy the introductory paragraph. (AR 17.) The reasoning in support of this finding is limited to one paragraph of the ALJ's decision and provides the following:

> the claimant has never received a diagnosis for mental retardation. In addition, the claimant is able to drive, he performs household chores, he uses a computer for looking things up, for playing games or for reading books, and he testified to most recently reading half of a Tom Clancy book

**MEMORANDUM DECISION AND ORDER - 9**

> that he was able to understand. Accordingly, the record fails to show functioning adaptive deficits that are prerequisites for meeting listing 12.05.

(AR 17.) For the reasons outlined below, these are not legally sufficient reasons to support the ALJ's conclusion that petitioner failed to establish subaverage general intellectual functioning with deficits in adaptive functions before age 22.

The first reason the ALJ gave in support of his finding that Petitioner failed to satisfy the introductory paragraph was that Petitioner "has never received a diagnosis for mental retardation." (AR 17.) The Commissioner argues that this was a valid reason for finding that Petitioner did not meet Listing 12.05 and that "a diagnosis of mental retardation is a prerequisite to meeting or equaling Listing 12.05." (*Def.'s Br.* at 5, Dkt. 14.) The Court disagrees with the Commissioner that the Listing's introductory paragraph requires a formal diagnosis of mental retardation. The language of the Listing includes nothing about receiving a formal diagnosis. Moreover, the case law supports the conclusion that Listing 12.05 does not require a formal diagnosis of mental retardation. *See Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) ("We have specifically held that a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05"); *see also*, *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010) ("the absence of a diagnosis of 'mental retardation' does not preclude plaintiff from meeting section 12.05C."). The Commissioner has provided no authority to the contrary. Based upon the above discussion, the Court finds that the ALJ's reliance upon the

**MEMORANDUM DECISION AND ORDER - 10**

absence of a formal diagnosis of mental retardation constituted legal error.

In support of his conclusion that the record failed to show functioning adaptive deficits, the ALJ noted that "the claimant is able to drive, he performs household chores, he uses a computer for looking things up, for playing games or for reading books, and he testified to most recently reading half of a Tom Clancy book." (AR 17.) In factually similar cases, federal courts have found similar reasons legally insufficient to conclude that the claimant did not meet Listing 12.05C. *See Markle v. Barnhart*, 324 F.3d 182, 186-87 (3d Cir. 2003) (holding that the ALJ improperly relied on daily activities such as paying bills, using an ATM machine, and administering medication in finding that such activities were inconsistent with mental retardation under 12.05C); *Brown v. Sec'y of health and Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (finding daily activities such as using public transit, driving, making change at a grocery store, doing laundry and cleaning, following a road map, and reading a newspaper are not inconsistent with Listing 12.05). Moreover, the cases reaching a different conclusion are factually distinguishable from this case. *See Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (finding substantial evidence for ALJ's conclusion that claimant was not mentally retarded where the claimant had a two-year college degree, was enrolled in a third year of college and had a history of several skilled jobs including teaching algebra at a private school).

Here, contrary to the ALJ's conclusion, the record supports the finding that Petitioner suffered from subaverage general intellectual functioning with deficits in adaptive functioning before age 22. Petitioner was diagnosed with Pervasive

**MEMORANDUM DECISION AND ORDER - 11**

Developmental Disorder at age four. (AR 228.) He was placed in special education classes beginning in the second grade until the time he left school. (AR 220.) Petitioner dropped out of school after the eighth grade. (*Id.*) At age 16, Petitioner received a performance IQ of 70. (AR 156.) He has attempted the GED exam multiple times, but has failed to pass. (AR 182.) In 2008, Petitioner was assigned a Global Assessment of Functioning ("GAF") scale score of 50, which signifies serious difficulties in social and occupational functioning.[2] (AR 264.) The record also indicates that Petitioner has been prescribed medications for his mental disorders since age seven. (AR 228.)

The above facts support a finding that Petitioner's subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. *See Markle*, 324 F.3d at 189 (finding evidence that the claimant took special education classes through the ninth grade, dropped out in the tenth grade, struggled to obtain a GED, and had limited work history supported a finding that onset of mental retardation occurred before age 22); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (holding that ALJ erred in finding claimant's mental retardation did not manifest itself before age 22 where claimant attended special education classes, dropped

---

[2] The Global Assessment of Functioning, or GAF, is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. The scale is presented and described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) published by he American Psychiatric Association.

**MEMORANDUM DECISION AND ORDER - 12**

out of school in the ninth grade, had trouble with reading, writing, and math, and had frequent fights with other children).

Based upon the above discussion, the Court concludes that the record supports the finding that Petitioner satisfies the introductory paragraph of Listing 12.05, and the ALJ's ruling to the contrary was the product of legal error and not supported by substantial evidence in the record.

### B.    Petitioner's IQ

The second element that a claimant must prove to meet the criteria of Listing 12.05C is "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The record indicates that in August of 2006, Dr. Gunnar Skollingsberg, Ph.D. found that Petitioner had a performance IQ score of 70. (AR 156.) The ALJ acknowledged the existence of this IQ score in his decision. (AR 17.) The ALJ did not reject the validity of the score. He stated, however, that "the record also shows higher subsequent scores." (AR 17.) The reference to higher scores as a reason for concluding that a claimant does not satisfy the requirements of 12.05C constitutes legal error. The Appendix to the Regulations makes clear that, when multiple IQ scores appear in the record, the ALJ must consider the lowest of these scores. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c) ("[i]n cases where more than one IQ is customarily derived from the tests administered . . . we use the lowest . . . in conjunction with 12.05.").

Because the record contains an IQ score within the range identified in paragraph C of Listing 12.05, and the ALJ did not take issue with the validity of that score, the Court

**MEMORANDUM DECISION AND ORDER - 13**

finds that Petitioner has satisfied the IQ element of Listing 12.05C.

### C.     Additional Limitation

The final criteria that a claimant must demonstrate to satisfy paragraph C under Listing 12.05 is that the claimant has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. Because the ALJ determined that "the record fails to show functioning adaptive deficits" as a prerequisite to Listing 12.05, (AR 17), the ALJ did not specifically address whether the second prong of paragraph C under Listing 12.05 had been met.

The Appendix to the Regulations states that, "[f]or paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. In other words, a person who has a severe physical or other mental impairment, *as defined at step two of the disability analysis*, apart from the decreased intellectual function, meets the second prong of paragraph C under Listing 12.05.

Here, at step two of the five-step analysis, the ALJ found that Petitioner's mood disorder was a severe impairment within the meaning of 20 C.F.R. § 416.920(c). (AR 16.) That finding sufficiently satisfies the second prong of paragraph C under Listing 12.05.

**MEMORANDUM DECISION AND ORDER - 14**

**2.     Remedy**

Petitioner requests that the Court remand this case and order an immediate payment of benefits. A district court may remand a social security case with an order for immediate payment of benefits where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

The Ninth Circuit recently elaborated on when an order for immediate payment of benefits is appropriate, stating: "When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, __ F.3d __, 2012 WL 3185576 *8 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). The Court of Appeals also stated that the court "may exercise [its] discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" *Id.* (quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Id.*

**MEMORANDUM DECISION AND ORDER - 15**

The Court finds that no useful purpose would be served by further administrative proceedings. The Court has determined that the ALJ erred at step three of the five-step analysis and that Petitioner satisfies all the criteria required to meet Listing 12.05C. A determination at step three that a claimant meets a listing presumptively establishes disability. Thus, there are no outstanding issues that must be resolved before a determination can be made. Based on these considerations, the case will be remanded with an order directing the immediate payment of benefits.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)   This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)   This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 19, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**